PEOPLE v SAFIEDINE

Docket No. 81495. Submitted November 18, 1985, at Detroit. Decided
June 2, 1986. Leave to appeal denied, 426 Mich 859.

Defendant, Jim Safiedine, who owned three Detroit-area gasoline
stations, was convicted by a jury in the Recorder's Court of
Detroit of filing a false or fraudulent sales tax return. The trial
court, Michael J. Talbot, J., sentenced defendant to four years
probation, the first year to be served in the Detroit House of
Correction, and ordered defendant to pay tax deficiencies and
penalties of $155,542.96 and a fine of $5,000. Defendant ap-
pealed, raising several issues. *Held:*

1. A subpoena issued by the Treasury Department in this
case to defendant's accountant, under a statute which empow-
ers the Revenue Commissioner and duly appointed agents to
examine a taxpayer's books, records, and papers concerning tax
matters, compelled only defendant's accountant to produce
documents relating to defendant. Therefore, the transactional
immunity from prosecution conferred by the statute only ap-
plied to defendant's accountant and only defendant's accoun-
tant, and not defendant, was entitled to invoke such immunity
and the privilege against self-incrimination with respect to
evidence produced under the subpoena.

2. The trial court properly denied defendant's motion for a
new trial on the basis of newly discovered evidence, since
defendant failed to establish that the claimed newly discovered
evidence was such as to render a different result probable on
retrial and that defendant could not with reasonable diligence
have discovered and produced the evidence at trial.

3. The trial court did not abuse its discretion in admitting
the business records of defendant's gasoline suppliers under the
business records exception to the hearsay rule. MRE 803(6). An
adequate foundation was laid for the admission of these re-
cords.

4. The admission of the business records of defendant's

REFERENCES

Am Jur 2d, Criminal Law §§ 701-716, 936-952.

Am Jur 2d, Evidence §§ 498, 914 *et seq.*

Authentication and verification of bills and invoices under Rule
803(6) of the Uniform Rules of Evidence. 1 ALR4th 316.

gasoline suppliers did not violate defendant's right to confrontation.

Affirmed.

1. WITNESSES — TESTIMONY — TRANSACTIONAL IMMUNITY.

A transactional immunity provision which requires a person to give testimony but prohibits prosecuting that person for crimes which relate to the testimony given must be at least as broad as the constitutional protection against self-incrimination for which it is a substitute.

2. CONSTITUTIONAL LAW — SELF-INCRIMINATION.

The privilege against self-incrimination is a personal privilege and cannot be asserted on behalf of another (US Const, Am V; Const 1963, art 1, § 17).

3. CONSTITUTIONAL LAW — SELF-INCRIMINATION — JUDICIAL CONSTRUCTION.

The state constitutional privilege against self-incrimination does not require a different interpretation than that of the federal constitution (US Const, Am V; Const 1963, art 1, § 17).

4. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

The test for granting a new trial based on newly discovered evidence involves a finding that (1) the evidence itself, not merely its materiality, was newly discovered; (2) the evidence is not cumulative; (3) the evidence is such as to render a different result probable on retrial; and (4) the party offering the evidence could not with reasonable diligence have discovered and produced it at trial.

5. CRIMINAL LAW — NEW TRIAL — APPEAL.

The Court of Appeals will not disturb a trial court's ruling on a motion for a new trial in the absence of a clear abuse of discretion.

6. EVIDENCE — HEARSAY — BUSINESS RECORDS — RULES OF EVIDENCE.

The exception to the hearsay rule for records made in the regular course of business is justified on the grounds that business records by their very nature are precise and unusually reliable because of the systems employed in recording them and the reliance placed upon them by the business world (MRE 803[6]).

7. CRIMINAL LAW — EVIDENCE — HEARSAY — BUSINESS RECORDS — RULES OF EVIDENCE.

The admission of evidence in a criminal case pursuant to the exception to the hearsay rule for records made in the regular course of business does not violate a defendant's confrontation

rights where an adequate foundation was laid for such evidence; an adequate foundation need not include the testimony of the custodian of records or the person who created the records where such records can be effectively identified by other persons (MRE 803[6]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *E. David Brockman* and *Paul L. Bricker,* Assistant Attorneys General, for the people.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *George N. Bashara* and *Elizabeth A. Zatina*), for defendant.

Before: WAHLS, P.J., and R. B. BURNS and M. E. DODGE,* JJ.

M. E. DODGE, J. Following a jury trial, defendant was convicted of filing a false or fraudulent sales tax return, MCL 205.27; MSA 7.657(27). He was sentenced to four years probation, the first year to be served in the Detroit House of Correction, and ordered to pay tax deficiencies and penalties of $155,542.96 and a $5,000 fine. We affirm.

Defendant owned three Detroit-area gas stations at 18111 West Eight Mile Road, 23891 West McNichols Road, and 17700 East Nine Mile Road. He was charged with seven counts of sales tax evasion for failing to report gross sales accurately and understating gasoline purchases for January, 1982, through July, 1982. The information alleged a sales tax deficiency of approximately $54,000.

The case against defendant consisted primarily of documentary evidence. This included invoices, freight bills, and other similar evidence of deliveries introduced through the testimony of defendant's various gasoline wholesalers. Also intro-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

duced were defendant's tax returns for the months in question, as well as testimony concerning audits by the Michigan Department of Treasury.

Defendant's first issue concerns a subpoena issued pursuant to MCL 205.3(a); MSA 7.657(3)(a) by the treasury department to Terrie Makolin, an employee of the accounting firm used by defendant. This preceded the commencement of these proceedings. The existence of the subpoena, however, was discovered during the later trial of defendant's business associate.[1] Makolin was interviewed by treasury department agents. While there is some question as to what was actually produced pursuant to the subpoena, or if any of defendant's records were produced, the prosecutor has conceded that records were produced and examined by treasury agents.

MCL 205.3(a); MSA 7.657(3)(a) empowers the revenue commissioner and duly appointed agents to examine a taxpayer's books, records, and papers concerning tax matters. It provides for subpoenas, including those for production of the necessary books, records, and papers. It also provides:

> No person shall be excused from testifying or from producing any books, papers, records, or memoranda in any investigation, or upon any hearing when ordered to do so by the commissioner, upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate or subject him to a criminal penalty; but no person shall be prosecuted or subjected to any criminal penalty for or on account of any

---

[1] We find no merit in defendant's contention that the trial court erred in limiting defendant's cross-examination of the treasury agents, thus preventing the existence of the subpoena from coming to light at his trial. Our review of the cross-examination as well as a subsequent discussion by defense counsel reveals that the trial court limited the cross-examination only in regards to the defendant's selective prosecution theory and not in other areas.

transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the board or its agent. No person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying.

Defendant argues that, because MCL 205.3(a); MSA 7.657(3)(a) grants immunity from prosecution based on any transaction concerning which the production of documents was compelled, he was immune from the present prosecution and his conviction must be reversed. Specifically, defendant argues that failure to give him immunity violates his privilege against self-incrimination under the United States and Michigan Constitutions, US Const, Am V; Const 1963, art 1, § 17.

The statute has been construed as preserving a person's state and federal constitutional privileges against self-incrimintion. Such a transactional immunity provision must be at least as broad as the constitutional protections against self-incrimination for which it is a substitute. *People v Parsons,* 142 Mich App 751, 756-757; 371 NW2d 440 (1985), citing *In re Colacasides,* 379 Mich 69, 84; 150 NW2d 1 (1967), and *In re Watson,* 293 Mich 263, 276; 291 NW 652 (1940).

The Fifth Amendment privilege against self-incrimination is a personal privilege and cannot be asserted on behalf of another. *Paramount Pictures Corp v Miskinis,* 418 Mich 708, 715; 344 NW2d 788 (1984). Nothing in the decisions of the Michigan Supreme Court requires an interpretation of the Michigan constitutional privilege against self-incrimination different from that of the United States Constitution. *Paramount Pictures, supra,* p 726.

The statute embodies the personal nature of the privilege by its very terms. It protects the person

who produces documents pursuant to a subpoena from prosecution "for or on account of any transaction made or thing concerning which he may testify or produce evidence . . . ." The subpoena was issued to defendant's accountant and defendant's accountant received immunity.

We find the case of *Couch v United States,* 409 US 322; 93 S Ct 611; 34 L Ed 2d 548 (1973), instructive. In *Couch,* the United States Supreme Court considered whether a taxpayer may invoke her Fifth Amendment privilege against compulsory self-incrimination to prevent the production of her business and tax records in her accountant's possession, records which the taxpayer owned. Emphasizing the personal nature of the privilege, the Court found the ingredient of personal compulsion lacking. The summons and order were directed at the accountant and the taxpayer was not compelled to do anything. The accountant had no claim that anything produced would incriminate the accountant. 409 US 327-329.

Our reading of *Couch* convinces us that, by analogy, if the defendant in the instant case cannot claim a privilege against self-incrimination by reason of his accountant's production of the records, he is also not entitled to the transactional immunity from prosecution granted by the statute.[2] Such a holding, of course, does not implicate whatever Fifth Amendment privilege the defen-

[2] MCL 205.3(a); MSA 7.657(3)(a) grants transactional immunity. Transactional immunity has been defined as "immunity from prosecution for offenses to which compelled testimony relates." Use immunity is defined as immunity from "use of compelled testimony and evidence derived therefrom." *Kastigar v United States,* 406 US 441, 443; 92 S Ct 1653; 32 L Ed 2d 212 (1972); *People v Patterson,* 58 Mich App 727, 730; 228 NW2d 804 (1975); lv den 394 Mich 796 (1975). The *Kastigar* holding was that a use immunity statute was coextensive with the Fifth Amendment privilege. It follows that transactional immunity affords a witness considerably broader protection than does the Fifth Amendment. *Kastigar, supra,* p 453.

Defendant's abbreviated argument couches the analysis only in

dant might have enjoyed from being compelled to produce the documents and records himself.[3] See *Fisher v United States,* 425 US 391, 402; 96 S Ct 1569; 48 L Ed 2d 39 (1976).

Defendant also argues that he should be granted a new trial because of newly discovered evidence. According to defendant's brief, this consists of the testimony of John Baker, a delivery driver for Royal Gas & Oil, one of defendant's suppliers, at the later trial of defendant's relative. Baker testified that Royal on occasion delivered "short loads," not delivering all of the gasoline for which it billed its customers. Baker also testified that he would sometimes be instructed to deliver gas to one location then later told to deliver it elsewhere, but he would not change the paperwork. Defendant emphasizes the importance of this evidence in

terms of his privilege against self-incrimination, which will be the same under either use or transactional immunity statutes. We need not decide if some other additional protection afforded by a broader transactional immunity can bring defendant within the protection of a statute applying to his accountant. We think, however, that the same reasoning as used for the Fifth Amendment privilege and the clear wording of the statute require that even the broader transactional immunity protection be personal to the person testifying or producing evidence, not a third party incidentally incriminated.

[3] We note that defendant has not raised any claim pertaining to an accountant-client privilege such as that found in MCL 339.713; MSA 18.425(713). We have not been given sufficient facts concerning the nature of the records defendant's accountant allegedly produced to decide such a claim even if it were properly before us. The lack of a federal accountant-client privilege was noted in *Couch v United States,* 409 US 322, 335; 93 S Ct 611; 34 L Ed 2d 548 (1973), wherein the Court also noted the lack of justification for such a privilege where records relevant to income tax returns are involved in a criminal investigation or prosecution. Cf. *Fisher v United States,* 425 US 391, 404-405; 96 S Ct 1569; 48 L Ed 2d 39 (1976), which analyzed a situation similar to the facts of the instant case but involving an attorney-client privilege. The Court concluded that whether documents obtained by the taxpayers from their accountant and transferred to their attorneys for legal advice were obtainable by a summons directed to the attorney depended on whether the same documents would have been obtainable directly from the taxpayers, which question had to be answered in terms of the Fifth Amendment privilege against self-incrimination.

light of the testimony by Royal's president that the drivers recorded the amount of gasoline delivered to customers and the fact that the case against defendant was built by comparing records of gasoline sold to defendant with the gasoline reported in sales tax returns.

A motion for a new trial based on newly discovered evidence should only be granted if defendant meets a four-part test: (1) the evidence itself, not merely its materiality, is newly discovered; (2) the evidence is not cumulative; (3) the evidence is such as to render a different result probable on retrial of the case; and (4) the defendant could not with reasonable diligence have discovered and produced the evidence at trial. *People v Somma,* 123 Mich App 658, 665; 333 NW2d 117 (1983). We will not disturb the trial court's ruling in the absence of a clear abuse of discretion. *People v Miller,* 141 Mich App 637, 642; 367 NW2d 892 (1985).

The prosecutor has conceded that the first two parts of the test are satisfied. With regard to the remaining two, however, we note that defendant received a list of Royal's delivery truck drivers which included Baker's name. Defendant failed to exercise reasonable diligence to uncover Baker's evidence for his own trial. Moreover, of defendant's four suppliers during the period in question, Royal supplied the second smallest volume of gasoline. Even if the jury discounted all of Royal's deliveries, defendant would be left with an enormous understatement of gasoline sales for the period. It is unlikely that this evidence would produce a different result on retrial.

Defendant next argues that the trial court erred in admitting the business records of defendant's gasoline suppliers under the business records exception to the hearsay rule, MRE 803(6). In particular, defendant argues that the prosecutor failed

to establish an adequate foundation for the re-cords.

MRE 803(6) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, it kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The admission of such evidence is justified on the grounds that business records by their very nature are precise and unusually reliable because of the systems employed in recording them and the reliance placed upon them by the business world. *Muilenberg v Upjohn Co,* 115 Mich App 316, 327; 320 NW2d 358 (1982).

With regard to the Mobil Oil Company records, the testimony of Charles J. Rullo, a district sales manager, established that the records were made in the ordinary course of business as a regular part of Mobil's business, and were made at or near the times of the transactions. There was further testimony that the records were compiled from

information submitted by persons with knowledge of the information, and that the information was checked for accuracy. It was not necessary that the employee who actually fed the information into Mobil's computers be present to lay the foundation, as Rullo testified he was familiar with the company's computer operations and demonstrated that familiarity. See *People v Kirtdoll,* 391 Mich 370, 390, n 11; 217 NW2d 37 (1974), interpreting MCL 600.2146; MSA 27A.2146, an analogous statutory business records exception. Rullo was thus a "qualified witness" within the rule's meaning. We find no merit in defendant's argument that he was denied an opportunity to inquire into the accuracy of Mobil's computer procedures, as it was defense counsel who consistently interrupted Rullo's attempts to explain company computer procedures.

We similarly find no merit in defendant's objections concerning the records for Knowles Oil Company. Roxanne Knowles, the corporate secretary, testified that the company records and invoices were prepared in the regular course of business as a regular practice, and that the records were prepared at or near the times of the transactions. Knowles was custodian of the records, had personally typed many of them, and explained the procedure by which the records were maintained. With regard to defendant's objections to the business records of Royal and Knight Oil Company, our review of the record also discloses an adequate foundation under MRE 803(6).

We find no abuse of discretion in the trial court's admission of the business records.

Defendant finally argues that, even assuming a proper foundation for these business records under MRE 803(6), their admission violated the confrontation clauses of the United States and Michigan

Constitutions, US Const, Am VI; Const 1963, art 1, § 20.

Although courts have often recognized the similarity in origin and purpose of the hearsay rule and the right of confrontation, the two are not completely congruent. Evidence admissible under a recognized hearsay exception may violate confrontation rights. *California v Green,* 399 US 149, 155-156; 90 S Ct 1930; 26 L Ed 2d 489 (1970). Such instances, however, are rare. *United States v King,* 613 F2d 670, 673 (CA 7, 1980). Moreover, merely because evidence has, for example, been admitted in violation of a long-established hearsay rule does not automatically mean that confrontation rights have been denied. *Green, supra.* The focus must be on whether there are "indicia of reliability" in determining whether a statement may be placed before the jury though there is no confrontation of the declarant. *Mancusi v Stubbs,* 408 US 204, 213; 92 S Ct 2308; 33 L Ed 2d 293 (1972); *Dutton v Evans,* 400 US 74, 88-89; 91 S Ct 210; 27 L Ed 2d 213 (1970).

This Court has also previously noted that nothing in the confrontation clause automatically requires exclusion of all hearsay. Whether a particular hearsay statement may be admitted without infringing on a defendant's confrontation rights depends on the nature of the declaration and the circumstances of its making. *People v Sullivan,* 97 Mich App 488, 494; 296 NW2d 81 (1980), lv den 412 Mich 902 (1982).

We find the Michigan Supreme Court's pronouncements in *Kirtdoll, supra,* controlling. Following a long and scholarly discussion of the confrontation clause and its relationship to recognized hearsay exceptions and exclusions, the Court concluded that admission of evidence in a criminal case pursuant to the business entry statute, MCL

600.2146; MSA 27A.2146, does not violate a defendant's confrontation rights, thus treating the business records exception on a similar footing as other hearsay exceptions. The nature of the exception secures the trustworthiness of the evidence. As a consequence, the safeguard of cross-examination is not necessary to assure the truth. *Kirtdoll, supra,* pp 380-390.

We see no difference under MRE 803(6). Having determined that adequate foundations were laid for the evidence in question, we find nothing suggesting that defendant's confrontation rights were violated in this case. Defendant's insistence on only the custodian of records or the person actually creating the records testifying would defeat one purpose of the hearsay exception recognized in *Kirtdoll.* Limitations on the right of confrontation generally include an element of necessity. In the case of the business records exception, this is the avoidance of breakdown in business operations by calling away persons from critical work to verify trustworthy records that speak for themselves and which can be effectively identified by other persons. *Kirtdoll, supra,* pp 389-390.

Accordingly, we affirm defendant's conviction.