PEOPLE v BECKLEY

Docket No. 82153. Submitted January 8, 1987, at Lansing. Decided July 6, 1987. Leave to appeal applied for.

Robert Lee Beckley was convicted of first-degree criminal sexual conduct, Muskegon Circuit Court, R. Max Daniels, J. Defendant appealed, alleging error in allowing a rape counsellor's testimony that the complainant's postincident behavior was consistent with sexual intercourse and error in denying his motion for a new trial based on newly discovered evidence.

The Court of Appeals *held:*

1. The rape counsellor's testimony was admissible to rebut the inference by defendant that the complainant's behavior was inconsistent with her having had sexual intercourse with him.

2. The evidence relied upon by defendant to justify his motion for a new trial was cumulative in effect and would not have rendered a different result probable. The fact that the trial court reached the proper result for the wrong reason is immaterial.

Affirmed.

1. Evidence — Expert Testimony — Rules of Evidence.

Three criteria must be satisfied for testimony to be admitted as expert testimony: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man (MRE 702).

2. Rape — Evidence — Rebuttal — Expert Witnesses.

A rape counsellor's expert testimony to the effect that an alleged

REFERENCES

Am Jur 2d, Evidence §§ 250, 269.

Am Jur 2d, Expert and Opinion Evidence, §§ 26-32.

Am Jur 2d, New Trial §§ 164 *et seq.*

Am Jur 2d, Rape § 68.

What constitutes "newly discovered evidence" within meaning of Rule 33 of Federal Rules of Criminal Procedure relating to motions for new trial. 44 ALR Fed 13.

See also the annotations in the Index to Annotations under Expert and Opinion Evidence; Rape.

victim's postincident behavior was consistent with having been a victim of sexual abuse is admissible to rebut an inference that the behavior was inconsistent with that expected of such a victim.

3. New Trial — Newly Discovered Evidence.

The test for granting a new trial based on new evidence involves a finding that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the evidence is not cumulative; (3) the evidence is such as to render a different result probable on retrial; and (4) the party offering the evidence could not with reasonable diligence have discovered and produced it at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Harold F. Closz, III,* Prosecuting Attorney, and *Judith K. Simonson,* Senior Assistant Prosecuting Attorney, for the people.

*Varnum, Riddering, Schmidt & Howlett* (by *Dennis C. Kolenda*), for defendant.

Before: Hood, P.J., and Beasley and L. Townsend,* JJ.

Per Curiam. Defendant, Robert Lee Beckley, was convicted by a jury of criminal sexual conduct in the first degree, in violation of MCL 750.520b(1)(b); MSA 28.788(2)(1)(b). He brought a motion for judgment notwithstanding the verdict or a new trial, which motion was denied in an opinion filed October 31, 1984. The Muskegon Circuit Court filed its judgment on November 28, 1984, sentencing defendant to serve not less than four nor more than twenty years in prison, with credit given for two days already served. Defendant appeals as of right.

Defendant was convicted of having sexual intercourse with his fifteen-year-old daughter. Accord-

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ing to the daughter's testimony, the incident occurred on May 29, 1983, while she was living with defendant, who was separated from her mother. Upon defendant's return home from what the daughter believed to be a bar, he gave her several "french kisses" and rubbed her back. He then went to his bedroom and called for her to come into the bedroom less than thirty minutes later. He asked her to come "lay down with me for a while." She testified that he pulled her into bed with him, undressed her and had vaginal intercourse with her. The incident lasted for ten minutes, during which the daughter felt pain and bled profusely. She testified that defendant made her promise not to tell anyone.

After the incident, the daughter cleaned herself and telephoned her mother, telling her that "dad was trying to make passes at me," but declined her mother's offer to pick her up. Five minutes later, she called back to ask to be picked up. Her mother did pick her up, taking her to her paternal grandmother, where they discussed defendant's advances without mention of intercourse. During the following year, the daughter told various people about defendant's advances, but made no mention of the intercourse. Various friends and acquaintances testified that she had told them about the advances, explicitly denying intercourse. She resumed visits with her father after the incident.

In the course of an assigned school project, the daughter handed in a journal which contained an entry dated April 4, 1984, indicating that the daughter had had intercourse with defendant. Her teacher reported this entry to the authorities, resulting in defendant's being charged with the instant offense.

In his cross-examination of the daughter and again at closing argument, defense counsel raised

the inference that the daughter's actions following the incident, where she did not mention the intercourse to anyone until a year afterwards and then only in a journal entry to a teacher, indicated behavior inconsistent for one who had actually been assaulted. This was especially important because defendant's version of the facts was in reasonable agreement with the story the daughter told prior to April 4, 1984.

The prosecution called Robin Smietanka, a certified social worker engaged in the counselling of victims of rape, child sexual abuse and incest, who had counselled more than 1,200 child sexual abuse victims since 1976. In addition to counselling, Smietanka indicated that she investigates charges of child sexual abuse, using both experience and the consensus of available literature to identify behavior patterns which may indicate that a child was not, in fact, abused. Smietanka possessed a double master's degree in psychology and education. She had lectured to professional groups on the subject of child sexual abuse more than fifty times annually. At the time of trial, Smietanka had testified as an expert witness five times in circuit court and between thirty and fifty times in probate court.

Smietanka counselled the daughter on three occasions for an aggregate duration of more than five hours. On direct examination, the prosecutor identified four behavior patterns displayed by the daughter in the aftermath of the incident, asking the witness to assess whether they were inconsistent with the behavior of a child subjected to sexual abuse. The patterns discussed were: (1) the delayed disclosure in the school journal; (2) the medium of disclosure, i.e., to a nonfamily member through an impersonal writing; (3) the daughter's continued desire to see the alleged offender; and (4)

the daughter's initial tendency to deny to others the occurrence of the sexual abuse. Smietanka said that each of these patterns, and all of them taken together, were consistent, rather than inconsistent, with a child who had been sexually abused. She identified the causes, documented in literature of the field, for each of these apparently incongruous behavior patterns in an abused child. For example, the impersonal writing addressed to a comparative stranger is well documented in the literature and is referred to as leaving a "clue." It stems from the need to avoid the embarrassment of a face-to-face plea for help.

Defendant argues on appeal, as he did in the full hearing on the question before trial, that Smietanka's testimony should not have been admitted. Defendant argues that this was a kind of scientific evidence which does not meet the standard required for expert testimony and that Smietanka vouched for the credibility of the daughter, or went so far as to suggest that the assault actually occurred. Defendant refers to Smietanka's testimony as "evidence of rape trauma syndrome," although Smietanka herself does not seem to have used that term in her testimony.

MRE 702 provides:

> If the court determines that recognized scientific, technical, *or other specialized knowledge* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. [Emphasis added.]

Whether witnesses are sufficiently qualified to render opinions rests within the sound discretion of the trial court and that court's decision will

only be reversed for an abuse of discretion.[1] Three prerequisites must be satisfied before the witness may testify: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert must be in a field where knowledge belongs more to experts than to the common man.[2]

In the recent case of *People v Matlock,*[3] this Court reversed a conviction which was based, in part, on testimony similar to the testimony below. The rape counsellor in that case was permitted to testify exclusively on the issue of whether it is typical for a sexually abused child to delay reporting the incident or abuse, or to change her story concerning the incident, and was expressly forbidden to testify concerning the child's credibility. The witness went beyond the scope of the court's order, however, and testified both as to her personal opinion that children do not lie about sexual abuse and to her experience that she had never encountered a lying child. Importantly, however, the *Matlock* Court went on to say:

> In this case Waters was called upon to testify that a delay in reporting the rape is normal in such cases and this testimony was elicited from the counselor only to counteract the testimony of defendant that it was somehow abnormal for the victim to wait so long to report the incident. *We conclude that this testimony could be properly considered by the jury under a cautionary instruction which prohibited the jury from using the testimony about the delay being normal in such cases to prove the existence of the rape* but permitted consideration of that testimony only to

---

[1] *People v Barr,* 156 Mich App 450; 402 NW2d 489 (1986).

[2] *Id.,* p 456.

[3] 153 Mich App 171; 395 NW2d 274 (1986).

explain the delay which was criticized by the defendant. [Emphasis added.][4]

In this case, there was just such a cautionary instruction below. The trial judge advised the jury:

> In this case we had an expert witness . . . . [S]he has given her opinion as an expert in the field of psychology. As an expert a person is permitted to give her opinion as to matters of which she is an expert. The expert testimony in this case may be considered only as to whether she saw anything in the complainant which was inconsistent with the profile of an incest victim. You should not consider her testimony as bearing on the complainant's credibility or whether or not in fact the complainant had actually been an incest victim. You are not bound to follow the opinion of any expert. You may give it whatever weight you believe it deserves. In determining whether or not to believe the opinion of an expert, you should consider the reasons and facts upon which she bases her opinion and whether those facts are true. You should consider the qualifications and believability of the expert in light of all the evidence in the case.

Like the court's order in *Matlock,* the trial court's opinion endorsing Smietanka as an expert witness explicitly contemplated defendant's claim that an incest victim would not have behaved as his daughter did and specifically limited the scope of the testimony to whether Smietanka "saw anything in the complainant which was inconsistent with the profile of an incest victim." The court specifically forbade Smietanka to testify as to the daughter's credibility or whether in fact she was an incest victim.

4 *Id.,* p 178.

In his third supplemental brief, filed after *Matlock* was published, defendant argues that the cautionary instruction was "internally inconsistent" because it told the jury that "the testimony could be used to evaluate whether the complainant fit the profile of an incest victim." This, according to defendant, was tantamount to telling the jury that the testimony could be used to determine whether the daughter actually *was* an incest victim. In the context of the testimony and the instruction, we do not agree that the instruction was "inconsistent" as defendant argues.

Defendant says that here, as in *Matlock,* the witness crossed the line by vouching for the credibility of the daughter. Our review of the record indicates otherwise. In fact, Smietanka pointedly *avoided* vouching for the victim or saying that she had, in fact, been assaulted, in the face of defense counsel's efforts to obtain such a statement from her on cross-examination. Unlike the witness in *Matlock,* who said that she had never seen a child lie about sexual abuse, Smietanka went so far as to point out the sorts of behavior she observed in children who had not actually been abused.

*Matlock* is consistent with *People v Stull,*[5] in which a rape counselor was permitted to state that she saw nothing in the complainant which was inconsistent with the profile of a rape victim. The evidence was admitted, as in *Matlock* and here, to respond to defendant's issue as to whether a rape victim would have acted as the complainant did, the court noting that such testimony did not amount to expressing an opinion as to the victim's credibility. These cases are in line with *People v*

[5] 127 Mich App 14, 19; 338 NW2d 403 (1983).

*Draper,*[6] where it was held not to be an abuse of discretion to admit psychological testimony that a child's behavior was "consistent with behavior of a child who had been sexually abused," concluding that the child believed she had been abused.

Defendant's reliance on *People v Pullins*[7] is misplaced. Contrary to defendant's assumptions, *Pullins* is not in conflict with *Stull* or any of the other cases cited. *Pullins* stands for the proposition that evidence of rape trauma syndrome is not scientifically reliable as a means of showing that a rape occurred. If such evidence is presented for that purpose, it may not be given the aura of scientific reliability unless it meets the so-called *Davis-Frye*[8] standard, which governs whether scientific tests are admissible. We have no quarrel with the *Pullins* ruling; neither, we believe, would the panels in *Stull, Matlock* or *Draper.* It is simply inapplicable to this situation. There was no evidence of rape trauma syndrome, but rather of observed child behavior following alleged sexual abuse. The evidence was not presented as a means of showing that the assault occurred, but rather to rebut an inference that the victim's later behavior was incongruous for an actual victim of child abuse.

The recent case of *People v Skinner*[9] concurs with our own judgment concerning the applicability of *Pullins* to this specific, limited kind of evi-

[6] 150 Mich App 481, 487-488; 389 NW2d 89 (1986). We note that leave to appeal has been applied for in *Draper* and held in abeyance pending *People v Wesley,* Supreme Court Docket No. 77844. However, leave was granted in *Wesley* exclusively on a sentencing issue which it shares with *Draper.* 425 Mich 872 (1986). It would seem unlikely, therefore, that the Supreme Court will reach the evidentiary issues discussed herein, when and if it decides *Draper.*

[7] 145 Mich App 414, 420-422; 378 NW2d 502 (1985).

[8] *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923).

[9] 153 Mich App 815, 822; 396 NW2d 548 (1986).

dence. In *Skinner,* a psychologist was permitted to testify that the victim's symptoms were consistent with the victim's belief that she had been sexually abused. The *Skinner* Court said that the facts before it were unlike those in *Pullins* in that the witness did not claim that the victim's characteristics conclusively established that she had been raped.[10]

Defendant has pointed to numerous cases in other jurisdictions dealing with the admissibility of evidence of rape trauma syndrome. The within case, however, does not deal with rape trauma syndrome. We feel that the law in Michigan regarding the type of evidence offered in the trial court is reasonably firm, as we have discussed above.

To summarize, the trial court did not abuse its discretion in admitting Robin Smietanka's testimony. A rape counsellor's testimony is admissible, under established precedent, for the narrow purpose of rebutting an inference that a complainant's postincident behavior was inconsistent with that of an actual victim of sexual abuse, incest or rape. A cautionary instruction must be given to the jury. The evidence herein fits squarely into these categories.

Defendant raises one additional issue, arguing that he should have been granted a new trial on the basis of newly discovered evidence. The newly discovered evidence offered by defendant was the testimony of Steve Eppart, the daughter's former boyfriend. Eppart said that in August, 1983, some four months after the incident with defendant, he had sexual intercourse with the victim and could

---

[10] See, also, *In re Rinesmith,* 144 Mich App 475, 481-482; 376 NW2d 139 (1985), holding that use of anatomically correct dolls, which does not meet the *Davis-Frye* standard, may be used because it does not purport to be a conclusive scientific test for establishing the existence of abuse.

tell that she was still a virgin at that time. The basis for Eppart's opinion was (1) the victim bled a great deal; (2) the victim was very "tight"; and (3) Eppart had had intercourse with one virgin before. Eppart also said that the victim, at that time, denied having intercourse with defendant. The prosecutor called a gynecologist, Dr. Raymond Cooper, who testified that there were several reasons a fifteen-year-old girl might bleed during intercourse without being a virgin. These reasons included the beginning of the menstrual cycle, vaginal laceration or abrasion, bleeding from the cervix due to the presence of an ectopy and cervicitis, routine bleeding, or even the partial rupture of the hymen from an earlier act of intercourse. Dr. Cooper said that he had never seen an example of the last reason cited.

A trial court's ruling on a motion for new trial based on newly discovered evidence will not be disturbed in the absence of a clear abuse of discretion.[11] Defendant himself cites the four-part test he must meet before a new trial will be granted:

> (1) the evidence itself, not merely its materiality, is newly discovered; (2) the evidence is not cumulative; (3) the evidence is such as to render a different result probable on retrial of the case; and (4) the defendant could not with reasonable diligence have discovered and produced the evidence at trial.[12]

We do not believe that the evidence offered could pass the third part of this test, even assuming arguendo that the first, second and fourth parts were satisfied. This evidence would not ren-

---

[11] *People v Safiedine,* 152 Mich App 208, 215; 394 NW2d 22 (1986).

[12] *Id.,* citing *People v Somma,* 123 Mich App 658, 665; 333 NW2d 117 (1983); see also, *People v Barbara,* 400 Mich 352, 362-363; 255 NW2d 171 (1977).

der a different result probable on retrial. We are speaking here of an eighteen-year-old boy whose sole basis for his opinion that the victim was a virgin in August of 1983 is the fact that he allegedly had intercourse with her, saw her bleed and had had sex with a virgin before. The bleeding by itself, as the gynecologist's testimony indicated, is not probative of anything. There is considerable doubt as to whether this witness would even be competent to render this opinion as to the victim's virginity, which, after all, is a matter of anatomy and physiology. We have been unable to find a single case where a witness was permitted to testify as to his sexual partner's virginity at the time of his earliest sexual relations with her based on nothing but his own observations. It seems somewhat ludicrous to us that defendant, who denies that a psychologist with more than 1,200 cases behind her can testify competently, turns around to argue that this teenager ought to be permitted to testify to a physiological fact based on his one previous sexual encounter with a virgin. As to the victim's alleged statement to Eppart that she had not had intercourse with her father, this would be merely cumulative of the already established fact that the victim denied the intercourse during the first year after its occurrence.

Defendant points out that the trial court based its denial of the motion almost entirely on the rape shield law, MCL 750.520j; MSA 28.788(10). Defendant argues vigorously that the rape shield law does not apply to this particular evidence. This may be so, but we will not reverse a trial court when it reaches the correct result for the wrong reason.[13]

Affirmed.

[13] *People v Perryman,* 89 Mich App 516, 520; 280 NW2d 579 (1979).