*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY QUINTAE HAWKINS,

Defendant-Appellant.

FOR PUBLICATION
December 14, 2023
9:00 a.m.

No. 365076
Wayne Circuit Court
LC No. 21-006344-01-FC

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

RIORDAN, P.J.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order granting the prosecution's motion in limine to preclude the testimony of Dr. Keith Button, Ph.D., his expert witness. On appeal, defendant argues that the trial court abused its discretion and violated his constitutional right to present a defense by precluding Dr. Button's testimony. We reverse and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant is charged with felony murder, MCL 750.316(1)(b), first-degree child abuse, MCL 750.136b(2), and second-degree murder, MCL 750.317. These charges stem from the death of the 8-month-old decedent. Before trial, defendant retained Dr. Button, a biomechanical engineer, as an expert witness to counter the prosecution's evidence that the decedent's injuries were caused by multiple blows or incidents of trauma. Defense counsel summarized Dr. Button's anticipated testimony, which essentially would opine that the decedent's injuries could have resulted, and likely did result, from a single impact or trauma.

The prosecution filed a motion in limine to exclude Dr. Button's testimony. The prosecution argued, in relevant part, that Dr. Button, as a biomechanical engineer, was not

---

[1] See *People v Hawkins*, unpublished order of the Court of Appeals, entered March 30, 2023 (Docket No. 365076).

qualified to testify regarding medical causation of injuries and could offer no medical opinions. In response, defense counsel clarified that Dr. Button's testimony "concern[s] the effect of forces imparted upon the human body. Specifically, Dr. Button will testify that the skull fractures present upon autopsy of the [decedent] could have been caused by a single impulse of force to the rear of the child's head." Defense counsel argued that Michigan and other state courts allow biomechanical engineers to testify concerning "how forces and motion impact and affect a body" and "the general effect of forces on the human body."

At a hearing regarding the prosecution's motion, defense counsel explained that Dr. Button would not opine on the cause or manner of death. Defense counsel admitted that Dr. Button was not qualified as a medical expert, saying he would "withdraw any proposal that [Dr. Button]'s going to testify as such." Rather, Dr. Button would be called to testify regarding whether the decedent's skull fractures were "necessarily" the result of multiple blunt trauma, or whether those fractures could instead be the result of "a single impulse of force." The prosecution countered that Dr. Button's testimony was just a backdoor way to present medical conclusions, and that it would not assist—and would confuse—the trier of fact.

The trial court agreed with the prosecution and, following the hearing, entered an order granting a motion to "preclude Doctor Keith [Button]" from testifying. This Court granted defendant's application for leave to appeal and stayed further proceedings in the trial court pending appeal. See *People v Hawkins*, unpublished order of the Court of Appeals, entered March 30, 2023 (Docket No. 365076).

## II. STANDARD OF REVIEW

"Preserved evidentiary rulings are reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217. Interpretation of the rules of evidence is an issue of law that this Court reviews de novo. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). "A trial court necessarily abuses its discretion when the court permits the introduction of evidence that is inadmissible as a matter of law." *Id.* However, "[a] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016) (quotation marks and citation omitted).

This Court also reviews a trial court's decision on a motion in limine for an abuse of discretion. *Bellevue Ventures, Inc v Morang-Kelly Inv*, 302 Mich App 59, 63; 836 NW2d 898 (2013). This Court reviews de novo whether a defendant was denied the constitutional right to present a defense. *Unger*, 278 Mich App at 247.

## III. ANALYSIS

-2-

Defendant argues that the trial court abused its discretion and violated his constitutional right to present a defense by precluding Dr. Button's testimony. We agree with the first argument and thus we need not consider his second.[2]

MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The admission of expert testimony requires that: "(1) the witness [is] an expert; (2) there [are] facts in evidence which require or are subject to expert analysis; and (3) the knowledge of the expert [is] in a field where knowledge belongs more to experts than to the common man." *People v Beckley*, 161 Mich App 120, 125; 409 NW2d 759 (1987).[3] Further, "the proponent of expert testimony must establish that the testimony is reliable by showing that it 'is based on sufficient facts or data,' that it 'is the product of reliable principles and methods,' and that the proposed expert witness 'has applied the principles and methods reliably to the facts of the case.' " *Unger*, 278 Mich App at 217, quoting MRE 702.

"The party proffering the expert's testimony must persuade the court that the expert possesses specialized knowledge which will aid the trier of fact in understanding the evidence or determining a fact in issue." *People v Smith*, 425 Mich 98, 112; 387 NW2d 814 (1986). A witness may be qualified as an expert by knowledge, skill, experience, training, or education. MRE 702. "[A]n expert who lacks knowledge in the field at issue cannot assist the trier of fact." *People v Kowalski*, 492 Mich 106, 121; 821 NW2d 14 (2012) (quotation marks and citation omitted); see also *Unger*, 278 Mich App at 251 (stating that "an expert may not opine on matters outside his or her area of expertise"). However, "[g]aps or weaknesses in the witness'[s] expertise are a fit

---

[2] Because we agree that Dr. Button's testimony is admissible under the rules of evidence, we need not reach defendant's alternative argument that preclusion of Dr. Button's testimony violates his constitutional right to present a defense.

[3] Although this Court is not required to follow cases from this Court decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases") (emphasis omitted).

subject for cross-examination, and go to the weight of his [or her] testimony, not its admissibility. *People v Gambrell*, 429 Mich 401, 408; 415 NW2d 202 (1987).

Further, the United States Supreme Court, in *Kumho Tire Co v Carmichael*, 526 US 137; 119 S Ct 1167; 143 L Ed 2d 238 (1999), stated that "an expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152. As relevant to biomechanical engineers, the United States Court of Appeals for the Sixth Circuit in *Smelser v Norfolk Southern R Co*, 105 F3d 299 (CA 6, 1997),[4] held that a biomechanical engineer could not testify regarding injury causation specific to a particular victim. *Id*. at 305.

> This opinion testimony goes beyond [the expert]'s expertise in biomechanics. As he previously admitted, he was qualified to render an opinion that made use of his discipline's general principles, described the forces generated in the August 1989 rear-end collision, and spoke in general about the types of injuries those forces would generate. Huston is not a medical doctor who had reviewed [the victim]'s complete medical history, and his expertise in biomechanics did not qualify him to testify about the cause of [the victim]'s specific injuries. [*Id*.]

But, as noted, this case is merely persuasive.

Moving to Michigan law, in *Unger*, 278 Mich App 210, this Court affirmed where the defendant's biomechanical expert was allowed to testify and present evidence "regarding the dynamics of the victim's fall," but not concerning the victim allegedly suffering from a seizure at the time. *Id*. at 247-248.

> [The expert], a professor of biomechanical engineering, was not a physician. He had no expertise in the field of neurology, nor did he claim to have special knowledge concerning seizures and convulsions. As his testimony made clear, [the expert] merely speculated that the victim might have suffered seizures that were sufficiently violent to carry her body from the concrete pavement into the water. In reality, however, the medical testimony at trial indicated that this scenario was highly unlikely. [*Id*. at 249.]

We decline to articulate any bright-line rule prohibiting or allowing biomechanical engineers from providing testimony related to medical causation. Rather, depending on the particular facts at issue in a matter and the expert's specific expertise, a biomechanical engineer may testify, if not making a medical diagnosis, regarding the impact of the forces at play and a resulting injury. Here, the substance of Dr. Button's testimony is scientific, technical, and not common knowledge to the average person. Dr. Button's testimony is probative of a fact at issue at trial, whether the decedent's injuries resulted from a single blow or multiple blows. Dr. Button

---

[4] See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts.").

was further qualified to testify about how forces and motion impact the body, in this case the head, by nature of his knowledge, experience, training, and education on the subject.

While not a medical doctor, Dr. Button, per his curriculum vitae (CV), has specific expertise concerning infant head injuries and has written on the topic, and he is qualified to give an opinion grounded in biomechanics. His CV also states that he "is an Adjunct Professor at Lawrence Technological University in the Biomedical Engineering Department where he teaches a class on Forensic Biomechanics." This suggests a clear overlap between Dr. Button's knowledge and some of the issues involved in this case. This case is distinguishable from *Unger* given that the excluded testimony there was wholly speculative. In contrast, Dr. Button's proffered opinion here appears adequately based on the available evidence—including testimony, photographs, and medical records—as well as the laws of physics and the principles of dynamics, peer reviewed biomechanical studies, medical or biomechanical engineering literature, and his training and experience.

In any event, the parties do not dispute that Dr. Button could testify regarding the general forces at play in this case and how a typical person might be injured therefrom. And defendant has made clear that Dr. Button will not offer a medical opinion or diagnosis evaluating the decedent's cause of death, but only that the decedent's injuries, based on his biomechanical expertise and the forces at play here, could have been caused from a single impact or blow. This proposed testimony is within Dr. Button's area of expertise. The facts that Dr. Button is not a medical doctor and lacks specific medical training and education are weaknesses or gaps in his testimony to be explored on cross-examination.

For these reasons, we conclude that the trial court abused its discretion by precluding Dr. Button's testimony under the rules of evidence.[5]

## IV. CONCLUSION

We reverse and remand to the trial court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett

---

[5] Of course, the trial court retains its discretion regarding the scope of Dr. Button's permissible testimony at trial. As defendant acknowledges on appeal, "Dr. Button's testimony is not medical in nature; it is biomechanical."